# In the United States Court of Federal Claims

No. 13-280V
(Originally filed: August 26, 2014)
(Reissued: December 7, 2015)

* * * * * * * * * * * * * * * * * * * *

DAVID D. GRIFFIN,

                *Petitioner*,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                *Respondent.*

National Childhood
Vaccine Injury Act;
Eligibility; Employee of
the United States.

* * * * * * * * * * * * * * * * * * * *

    *Lisa A. Roquemore*, Irvine, CA, for plaintiff.

    *Lara A. Englund*, United States Department of Justice, with whom were *Catherine E. Reeves*, Assistant Director, *Vincent J. Matanoski*, Deputy Director, *Rupa Bhattacharyya*, Director, and *Stuart F. Delery*, Assistant Attorney General, Washington, DC, for defendant.

OPINION
‾‾‾‾‾‾‾

    Currently before the court is petitioner's motion for review of the Special Master's April 4, 2014 decision dismissing plaintiff's petition for compensation for an injury allegedly caused by a vaccine. The matter is fully briefed and ready for decision. Oral argument is unnecessary. For the reasons explained below, we deny petitioner's motion for review.

    On April 23, 2013, petitioner, David Griffin, filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 to-34 (2012) ("Vaccine Act"). The petition alleges that Mr. Griffin developed Guillain-Barré Syndrome ("GBS") after receiving an influenza vaccine on February 1, 2012, while working in Afghanistan as a contractor for the Department of Defense ("DOD"). Respondent filed a motion for summary judgment on July 2, 2013, arguing that, because petitioner received his vaccination outside the United States, he was not eligible for compensation

under the Vaccine Act because he was neither a member of the Armed Forces nor an employee of the United States at the time of his vaccination, and he did not return to the United States within six months of receiving the vaccine. The Special Master agreed that petitioner was not eligible for compensation under the Act and dismissed the petition. *See Griffin v. Sec'y of Health & Human Servs.*, No. 13-280V, 2014 WL 1653427 (Fed. Cl. Spec. Mstr. April 4, 2014).

**BACKGROUND**[1]

I.  Facts

Petitioner, David Griffin, a United States citizen, arrived in Afghanistan on January 31, 2012, to begin his position as a site manager for Fluor, an engineering construction company that contracted to provide support services to DOD and other government agencies. The contract specified that Fluor was not an agent of the government but rather was an independent contractor. Fluor was responsible for all aspects relating to its employees. This included making sure each Fluor employee passed medical and security clearances required by the DOD, obtaining passports and visas for employees, and training employees and ensuring that they receive government training for interactions with detainees. The Government retained the right to remove Fluor employees from the site, but only Fluor had the authority to terminate its employees. Contract personnel were prohibited from wearing military clothing unless authorized to do so. Even those contractors who were authorized to wear military uniforms were ordered to wear distinctive patches or badges so as not to be confused with members of the Armed Forces. Fluor contractors also agreed to identify themselves as such when corresponding with others to avoid creating the impression that they were government employees or members of the military.

As site manager, petitioner was required to possess knowledge of various managerial aspects of the base, including budgeting, supervising, communication, the military's network, the ordering of supplies, and issues concerning sanitary, plumbing, electrical and cooking needs. He attended daily and weekly meetings with military officials and kept in contact with his off-site Fluor supervisor through a weekly telephone conference. Many of petitioner's decisions were influenced by army regulations, and he received

---

[1] The facts are derived from the Special Master's decision and are not in dispute.

2

performance reviews from the military. All of Mr. Griffin's equipment was provided by the military.

Fluor paid Mr. Griffin directly, withheld federal income taxes from his paycheck, and also provided him with health and dental care. Fluor also ensured that its employees were covered by the Defense Base Act, which provides workers' compensation to civilian employees working on U.S. military bases.

Pursuant to the contract between Fluor and DOD, Mr. Griffin passed various medical and security clearances and was declared "fit for duty" in July of 2010. On February 1, 2012, the day after he arrived in Afghanistan, petitioner received an influenza vaccine at a Fluor Clinic at Bagram Airfield in accordance with DOD's requirements. In mid-February 2012, Mr. Griffin began to experience weakness and numbness in his extremities. He checked in to Makati Medical Center in the Philippines on March 9, and on March 12, Dr. Cynthia B. Anacay noted that petitioner's symptoms were indicative of GBS.

Mr. Griffin filed a petition under the Vaccine Act on April 23, 2013. Respondent filed a motion for summary judgment on August 9, 2013, arguing that the Vaccine Act is unambiguous in limiting compensation to employees of the United States and that the word "employee" should be considered in its ordinary meaning. An employee, respondent argued, is "one who works directly for an employer and receives compensation and other benefits directly from the employer in return." Under this definition, respondent concluded that Mr. Griffin was not an employee of the United States and, thus, was not eligible for compensation under the Vaccine Act.

II. The Special Master's Analysis

In order to receive compensation for an injury caused by a vaccine under the Vaccine Act, a petitioner must have

> (I) received the vaccine in the United States or in its trust territories, (II) received the vaccine outside of the United States or a trust territory and at the time of the vaccination such person was a citizen of the United States serving abroad as a member of the Armed Forces or otherwise as an employee of the United States or a dependent of such a citizen, or (III) received the vaccine outside the United States or a trust territory and the

>vaccine was manufactured by a vaccine manufacturer in the United States and such person returned to the United States not later than 6 months after the date of the vaccination.

42 U.S.C. § 300aa-11(c)(1)(B). Petitioner does not claim that he received the vaccine in the United States or in one of its trust territories, and thus the Special Master focused on subsections (II) and (III) in her analysis. She eliminated subsection (III) based on evidence that petitioner did not return to the United States within six months of receiving the flu vaccine. The Special Master also concluded that petitioner was not a member of the Armed Forces, defined in 10 U.S.C. § 101(4) (2012), as being a member of the "Army, Navy, Air Force, Marine Corps. and Coast Guard." This left only the possibility that petitioner could qualify for compensation as an "employee of the United States."

In determining whether Mr. Griffin was an employee of the United States, the Special Master looked to other statutory schemes and analyzed a hybrid of the common law agency factors applied by the Supreme Court in the ERISA[2] context in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992) (overturning the circuit court's affirmance of summary judgment because the lower courts failed to apply the common law master/servent agency test), and the factors considered by the D.C. Circuit in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979), to determine whether petitioner was a federal employee.[3] She focused on the overarching question of whether Fluor

---

[2] "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2012).

[3] *Spirides* involved a sex discrimination complaint brought under Title VII of the Civil Rights Act of 1964. The District Court for the District of Columbia dismissed plaintiff's complaint for lack of subject matter jurisdiction on the ground that plaintiff was an independent contractor and not an employee under the Act. The District Court based its decision primarily on the terms of plaintiff's string of successive one-year employment contracts. *Spirides*, 613 F.2d at 832. The D.C. Circuit Court overturned the district court's dismissal and remanded for further factual inquiring, holding that, although an employer's right to control an employee's "means and manner" of performance is the most important factor to consider in determining whether or not an individual is an employee, economic realities must also be taken into
(continued...)

or the Military had the right to control the means and manner of Mr. Griffin's performance by analyzing and balancing factors from both the common law agency test and the *Spirides* test. The Special Master noted that certain factors weighed in favor of the petitioner: the military provided petitioner with a place to work and tools with which to do his work; members of the military regularly met with petitioner; and DOD required petitioner to pass various medical and security clearances in order to work on base.

The Special Master ultimately decided, however, that more factors weighed against petitioner's claim that he was a federal employee: Fluor paid petitioner, it provided him with medical and dental benefits, it withheld federal income taxes from his paycheck, and it had the authority to terminate him. The Special Master observed that the terms of the contract stated specifically that petitioner was an independent contractor and not an employee of the United States. She also noted that petitioner possessed specialized knowledge and specific skills ,indicating that he did not fall into the traditional master/servant category of an employee; that petitioner provided support services to the military rather than participating in any core functions of the organization; and that petitioner's listing of Fluor as his employer on worker's compensation forms indicated that he believed Fluor to be his employer.

While recognizing that no one factor under either the common law or the *Spirides* tests was determinative, the Special Master concluded that the factors collectively weighed heavily against treating petitioner as an employee of the United States. She consequently determined that Mr. Griffin is ineligible to receive compensation under the Vaccine Act, granted respondent's motion for summary judgment, and dismissed the petition.

## DISCUSSION

This court has jurisdiction to review decisions of the special masters in accordance with 42 U.S.C. § 300aa-12. We review the special master's decision under the standard articulated in 42 U.S.C. § 300aa-12(e), and we

---

(...continued)
consideration in making that determination. *Id*. at 831-32. This can be achieved through "the application of general principles of the law of agency to undisputed or established facts. Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative." *Id*. at 831.

only set aside decisions in which "findings of fact or conclusion of law" are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* § 300aa-12(e)(2); *see Carson v. Sec'y of Health & Human Servs.*, 727 F.3d 1365, 1368 (Fed. Cir. 2013) (the reviewing court should "give no deference to the . . . Special Master's determinations of law, but uphold the Special Master's findings of fact unless they are arbitrary or capricious"). Special masters have discretion to weigh the evidence and "reversible error is 'extremely difficult to demonstrate'" unless the special master has failed to consider the relevant evidence of record, drawn implausible inferences or failed to articulate a rational basis for the decision. *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (quoting *Hines v. Sec'y Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1999)). The reviewing court does "not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses–these are all matters within the purview of the fact finder." *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011).

III. Petitioner Was Not An Employee of the United States

Petitioner challenges the Special Master's decision on three grounds. The first is that the Special Master's application of the common law agency test and the *Spirides* factors was legally and factually in error. Had the Special Master properly considered the evidence, she would have come to a different conclusion, according to petitioner. The second challenge, much like the first, is that the Special Master improperly applied the standard for summary judgment by not drawing reasonable inferences in his, the nonmovant's, favor. In petitioner's view, his exhibits and declaration testimony establish that the military was in charge of his time in Afghanistan, and thus the Special Master should have inferred that he was an employee of the United States when he received the vaccine. The third challenge raised by petitioner concerns legal and factual research conducted by the Special Master, which petitioner alleges was improper.

Respondent agrees with the Special Master's ultimate conclusion but also argues that her consideration of the common law agency test and the *Spirides* factors was unnecessary. Those were intended to regulate employment relationships, not to interpret bright line rules in statutory language, per respondent. Respondent urges that the Vaccine Act uses "employees of the United States" as a term of art and that government employees are governed by a unique set of statutes, which define their

6

relationship with the government. As such, considerations of common law factors and the meaning of "employee" under other statutory schemes is inappropriate, according to respondent.

We agree with respondent. Title V of the United States Code defines a federal employee as someone who is

> (1) appointed in the civil service by one of the following acting in an official capacity
> (A) the President;
> (B) a Member or Members of Congress, or the Congress;
> (C) a member of a uniformed service;
> (D) an individual who is an employee under this section;
> (E) the Head of a Government controlled corporation; or
> (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;
> (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
> (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105(a) (2012). Federal government employees are governed by Title V of the United States Code. As the courts have explained in a variety of contexts, federal workers' rights are defined by Title V and not by contract, the common law, or other statutes not specifically made applicable to federal workers. *See, e.g.*, *Doe v. United Sates*, 513 F.3d 1348, 1359 (Fed. Cir. 2008) ("federal employee benefits and pay are governed by statute, not by contract"); *Billings v. United States*, 322 F.3d 1328, 1333 (Fed. Cir. 2003) (stating that the Fair Labor Standards Act did not apply to federal employees until it was amended to make it specifically applicable to them); *New v. Dep't of Veterans Affairs*, 142 F.3d 1259, 1261 (Fed. Cir. 1998) (unemployment compensation for federal employees is governed by the Federal Employees Compensation Act, codified in Title V). *Cf. Harris v. United States*, 13 Cl. Ct. 363, 365 (1987) ("Overtime compensation due a federal employee is governed by statute and not be 'just and equitable' considerations."). Thus, when a statute limits its applicability, at least in part, to only United States employees, we

presume that Congress had in mind the definition of a federal employee from the statutes that govern them.

Petitioner has not alleged that he is a civil service employee nor that he was appointed by any of the above listed officials. Petitioner's right to compensation under the act begins and ends there. While the Special Master interpreted the Vaccine Act more liberally and looked outside of the realm of federal employment law to the common law and the remedial ERISA statute context, even this generous grant of consideration lead to the conclusion that Mr. Griffin was not an employee of the United States.

Congress enacted the Vaccine Act to make it simpler for those negatively affected by vaccinations in the United States to receive compensation. One clear limit upon the scope of the act, however, is its definition of who is eligible to receive compensation. Only those present in the United States, or who return there within six months of receiving the vaccine, or those serving abroad as a member of the military or in civil service are covered. *See* 42 U.S.C. § 300aa-11(c)(1)(B). When reading this provision of the Vaccine Act, the canon *expressio unius est exclusio alterius*, meaning to include one thing implies the exclusion of the other, is applicable. This canon "has force . . . when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Even if everything petitioner avers is true, and we draw all inferences in his favor, such as his *de facto* control by military officials, he was not a member of the United States Civil Service as defined section 2105 of the Title 5 when he received the influenza vaccine in Afghanistan.

Further, even if we examined the Special Master's application of the common law agency test and the factors applied by the *Spirides* court, we would conclude that it was not arbitrary and capricious. The Special Master considered all of the evidence presented, including the control of petitioner's day-to-day duties by the military, and concluded that ultimate control lay with Fluor, with whom he had an employment contract, from whom he received pay, and who had the power to terminate him. To the extent that the Special Master made any legal error, it was in petitioner's favor, and is thus harmless.

IV. The Special Master Did Not Abuse Her Discretion By Conducting Legal Research and Taking Limited Judicial Notice

Petitioner's third argument is that the Special Master improperly consulted materials outside the pleadings in making her determination of petitioner's ineligibility. Specifically, he argues that the Special Master's consultation of the Restatement (Second) of Agency, case law, dictionaries, and several websites, without providing him notice, amounted to legal error. Respondent disagrees, arguing that the Special Master did not err by conducting outside research without giving petitioner notice because the matters she researched were all appropriate issues for taking of judicial notice. Respondent cites the Federal Circuit's opinion in *Hines* as allowing for the taking of judicial notice in vaccination cases.[4] *Hines*, 940 F.2d at 1525-26.

Special Master Millman did not err by consulting the Restatement and case law when reviewing Mr. Griffin's petition. It is not error for a judicial officer to research prior decisions that might bear on the case in front of her. Our legal system rests largely on the principle of *stare decisis*. "'*Stare decisis* in essence makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience in its decision.'" *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed. Cir. 2008) (quoting *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993)). The Special Master's use of decisional law to support her determination was not only without fault, it was necessary. As to dictionaries and encyclopedias, both are within the bounds of judicial notice as they contain commonly known information which need not be proved. *B.V.D. Licensing Corp. v. Body Action Design*, 846 F.2d 727, 728 (Fed. Cir. 1988).

Special Master Millman also cited three websites not presented by the parties in her decision. Two of the websites she consulted were government websites: the Department of Labor website and the Department of Defense website. She consulted these for generally available information regarding insurance coverage under the Defense Base Act and the stated mission of the

---

[4] In *Hines*, the Special Master consulted a medical textbook in making his decision on a Vaccine Act petition. The petitioner there claimed that the Special Master erred by doing so because he did not allow petitioner a chance to respond to the evidence from the textbook. The Federal Circuit held that evidentiary principles of "fundamental fairness" were not violated in this instance of judicial notice because petitioner had the opportunity to respond and discredit information in the medical textbook on review by the Court of Federal Claims. The Federal Circuit also concluded that, even if the Special Master's taking of judicial notice was in error, the error was harmless as it was not critical to the resulting decision. *Hines*, 940 F.2d at 1525-26.

Department of Defense. The other website was an informal military website, which she used to expand the definition of Armed Forces to include members of the Reserves and the National Guard. "The Federal Rules of Evidence specifically permit the taking of judicial notice of a fact which is 'not subject to reasonable dispute' because it is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id*. at 1526. In his Motion for Review, Mr. Griffin made no attempt to discredit the Special Master's research as to its substance or to prove that the introduction of the research violated "fundamental fairness" principles. In short, he has not alleged any prejudice. Morever, we see no evidence that any of the information garnered from these websites was relied upon or crucial to the Special Master's holding, and we have no doubt that her conclusion would have been the same without the information therein provided. If the Special Master committed error by conducting outside research, it was innocuous.

## CONCLUSION

Because petitioner was not an employee of the United States when he received his vaccine abroad, he is not eligible for compensation under the Vaccine Act. The Special Master's decision granting summary judgment to defendant was therefore not arbitrary or capricious. Accordingly, the clerk is directed to dismiss the petition and enter judgment for respondent.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge
